46 CCPA

## Application of Robert Ashton BAYARD.

### Patent Appeal No. 6443.

United States Court of Customs and Patent Appeals.

July 10, 1959.

Ellsworth H. Mosher, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JACKSON (retired), Judges.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 2 and 10 of appellant's application for a patent on "Apparatus for Cooling Fluidized Solids." Two claims have been allowed.

The appealed claims read:

"2. A cooler as defined in claim 10 in which the cooling elements in each of said 'ladders' are at a different elevation than those in the preceding and succeeding 'ladder' whereby said cooling elements in said trough present a vertically staggered formation.

"10. A cooler for finely divided hot fluidizible solid materials, said cooler comprising; means for passing a controlled flow of fluidizing medium upwardly through said cooler; a plurality of pairs of opposed vertical cooling medium headers; and a plurality of horizontal cooling elements connected between each said pair of headers to form a series of ladders composed of a pair of headers and the associated cooling elements; said ladders being arranged in abutting relationship whereby the inner faces of abutting

headers form the side walls of a fluidizing trough; an insulated shell surrounding the fluidizing trough so formed and arranged to provide a space thereabove for spent fluidizing medium; means for withdrawing spent fluidizing medium from said space, means for supplying hot material to one end of said fluidizing trough, means for withdrawing cool material from the other end of said fluidizing trough and means for circulating a coolant medium through said headers and associated cooling elements."

The references relied on are:

| | | | |
|---|---|---|---|
| Duncan | Re | 11,061 | February 18, 1890. |
| Price | | 1,617,081 | February 8, 1927. |
| Handwerk | | 2,628,077 | February 10, 1953. |
| British Patent | | 587,774 | May 6, 1947. |

Appellant's application discloses apparatus for cooling finely divided solid materials, comprising an elongated trough-shaped chamber of generally rectangular cross-section, formed of sheet metal and provided with an insulating lining. The finely divided material which is to be cooled enters the chamber at one end and passes longitudinally through it and out at the other end. During such passage it is kept fluid, i. e., "fluidized," by air which flows continuously into the chamber through a porous membrane at the bottom, passes upwardly through the finely divided solid material and is removed by conduits at the top of the chamber.

The cooling is effected by circulating a cooling fluid through a system comprising pairs of vertical headers connected by horizontal cross pipes to form ladder-like units. The headers are located adjacent the opposite side walls of the chamber and the tubes extend across the chamber in the path of the fluidized solid material. The headers are larger than the cross tubes and are located adjacent each other so that they form, in effect, continuous linings for the side walls of the chamber. The cross tubes connecting adjacent pairs of headers are located at different elevations to provide a vertically staggered arrangement. The fluidized material thus follows a tortuous course over the cross tubes and is cooled by the cooling fluid which circulates through them. It is stated in the application that the disclosed arrangement of the headers prevents temperature differentials which might lead to distortion of the side walls of the apparatus.

The Duncan patent relates to apparatus for evaporating brine to recover the salt from it comprising a rectangular chamber, the lower portion of which forms a tank for receiving the brine, while the upper portion is closed except for a pipe which serves to remove the vapor to a condenser. The evaporation is effected by passing steam through an arrangement of vertical headers located against opposite walls of the tank, and through horizontal tubes connecting opposite pairs of headers. The headers are in contact to provide continuous linings for the sides of the chamber and the arrangement is similar to that of appellant's cooling unit, except that the cross tubes are not staggered. The entire heating unit is submerged in the brine and the brine passes vertically upward around the tubes and is heated by them.

The Handwerk patent discloses apparatus for heating or cooling fluidized solid particles comprising a cylindrical chamber provided with a jacket through which the heating or cooling medium is circulated. The fluidized material passes from one end of the chamber to the other in heat exchanging relationship with the jacket, and is kept fluid by means of a rotary agitator.

The British patent relates to a system in which a reaction chamber is cooled by

fluidized solids. The reaction materials pass through a series of tubes which are surrounded by a body of finely divided solid particles kept in fluid condition by gases which pass upwardly through them. The fluidized material is kept at the desired temperature by recirculating a portion of it through a conventional heat exchanger and back to the main body.

The Price patent was cited to show the staggering of adjacent tubes in a heat exchanger.

While the board's decision contains some language suggesting that the appealed claims were considered unpatentable over the Duncan patent alone, we agree with the statement in the Commissioner's brief that the only actual basis of rejection was that no patentable invention would be involved, in view of Handwerk and/or the British patent, in adapting the Duncan apparatus to the cooling of solid particles in the manner set forth in those claims.

The appealed claims differ only in that claim 2 is limited to the staggered arrangement of tubes, while claim 10 is not so limited. That feature is shown by the Price patent and obviously does not, alone, constitute a patentable advance over the prior art. Accordingly, the appealed claims will stand or fall together and only claim 10 will be considered specifically.

Appealed claim 10, so far as it is drawn to the construction of the heat exchange unit *per se*, is fully met by the Duncan patent which shows the claimed arrangement of vertical headers forming the walls of a trough and connected by horizontal tubes. However, whereas Duncan's liquid passes through the trough in a vertical direction, appellant's fluidized solid material moves through the trough horizontally, thus necessitating the passage of a controlled flow of fluidizing medium upwardly through it, and those features are recited in claim 10. It seems evident that Duncan's disclosure of a heat exchange unit submerged in a body of liquid would not, alone, suggest appellant's claimed apparatus. Assuming

that it would occur to a person skilled in the art to employ the Duncan apparatus for cooling fluidized solid material, the only obvious procedure would be to pass the material vertically through it. The patent contains nothing to suggest passing the material through the heat exchange elements in a horizontal direction, and a substantial reconstruction of the device would be necessary before it could be operated in that way.

The Handwerk patent shows the horizontal passing of fluidized solid material through a cooling element, but the maintaining of the material in fluid condition, which the patentee recognizes as being necessary, is effected by means of a rotary agitator passing axially through a cylindrical chamber and occupying the greater part of it. Such agitation clearly could not be used in connection with an exchange unit of the type recited in claim 10 since the spaces between the tubes are too small and too numerous to permit effective mechanical agitation. It follows that the Handwerk patent does not show how the Duncan apparatus could be adapted to a horizontal flow of fluidized solid particles.

The British patent discloses the idea of passing gas upwardly through a body of finely divided solid particles to maintain them in fluidized condition, but the particles are not moving through a chamber at that time. When the particles are to be transported to a heat exchanger, the patent discloses that they are removed vertically, apparently with little or no gas, and are passed vertically downward through the exchanger, after which they are picked up by a stream of carrier gas for return to the main body.

From the foregoing it will be seen that none of the references suggests the idea of using air or gas to keep finely divided material fluidized during its passage through a heat exchanger in a horizontal direction. Such use of air or gas renders a mechanical agitator unnecessary and permits the use of heat exchange tubing throughout the device in such a manner that the fluidized ma-

terial will be repeatedly brought into contact with, or close proximity to, the tubing, thus resulting in an efficient heat interchange.

As set forth in the appealed claims, appellant has embodied the idea last mentioned in a device which provides for effective cooling in a comparatively small space and in which the arrangement of the headers prevents distortion of the side walls due to temperature differentials.

 In our opinion the references do not fairly disclose or suggest the combination claimed here. One reference, Duncan, shows a heat exchanger element similar to appellants immersed in a brine tank, a second, Handwerk, shows the cooling of fluidized solid particles by passing them horizontally through a chamber containing a mechanical agitator, and a third, the British patent, discloses the fluidization of a mass of solid particles by passing air or gas upwardly through it, but there is nothing to suggest the desirability of combining those isolated features in a single structure in the manner required by the appealed claims. Even assuming that the idea of using Duncan's brine heater as a cooler for fluidized solid particles would occur to a person skilled in the art, there is no teaching that it should be adapted to such use by locating it in a trough through which solid particles, fluidized by vertically moving air or gas, are passed in a horizontal direction.

It is noted that appellant's specification states that his invention is an improvement over that disclosed in the application of Turney et al., Serial No. 237,032, filed July 16, 1951, more than ten months prior to the filing date of appellant's application, May 26, 1952. A copy of patent No. 2,824,723, which issued on the Turney et al. application, was included in the record here by appellant, and shows a structure which appears to be, at least in some respects, substantially more pertinent to the appealed claims than the references above considered. However, since neither the examiner nor the board mentioned the Tur-

ney et al. patent, we cannot properly consider it as a basis of rejection.

The decision of the Board of Appeals is reversed.

Reversed.